# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| LIA PRESTA, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 4:17-cv-0912 |
| | § | |
| OMNI HOTELS MANAGEMNT | § | |
| CORPORATION, | § | |
| Defendant | § | |

## MEMORANDUM AND ORDER

Pending before the Court in this disability and age discrimination action is Defendant Omni Hotels Management Corporation's ("Defendant" or "Omni") "Motion to Dismiss, or, in the Alternative, Motion to Compel Arbitration and Stay Litigation" (collectively, the "Omni Motion") [Doc. # 10].  Also pending is Plaintiff Lia Presta's ("Presta" or "Plaintiff") "Motion for Partial Summary Judgment" [Doc. # 11].   The Motions are fully briefed[1] and are ripe for

---

[1]    *See* Presta's Response to [the Omni Motion] [Doc. # 12]; Omni's Objections to Declaration of Lia Presta and Reply in Support of [the Omni Motion] ("Objections & Reply") [Doc. # 17]; Omni's Response to Presta's Motion for Partial Summary Judgment [Doc. # 16]; Presta's Reply in Support of her Motion for Partial Summary Judgment [Doc. # 18].

In its Objections & Reply [Doc. # 17], Omni objected to the Declaration of Lia Presta, attached as Exhibit 1 to Presta's Response to the Omni Motion.  *See* Declaration of Lia Presta [Doc. # 12-1].  Omni contends that certain statements in the Declaration are conclusory and constitute hearsay, among other things.  *See* (continued…)

determination.   Having carefully considered the parties' briefs, all matters of record, and the applicable legal authorities, the Court **grants** Presta's Motion for Partial Summary Judgment [Doc. # 11] and **denies** the Omni Motion [Doc. # 10].

## I.    BACKGROUND

The following facts are gleaned from Presta's First Amended Complaint [Doc. # 3] and the undisputed matters of record.  Presta, born in 1928, worked for a hotel located at Four Riverway in Houston, Texas, for approximately thirty-five years, including as a seamstress and in the laundry and housekeeping departments.[2] Omni alleges that it assumed management of the hotel in February 1995.[3]   On February 6, 2014, during the course of her employment, Presta signed a "Summary of the Amended and Restated Alternative Dispute Resolution Program," thereby affirming her acceptance of and participation in Omni's Dispute Resolution Program ("Program").[4]   Presta's acceptance of the Program also constituted

---

(continued…)
Omni Objections & Reply [Doc. # 17], at 2.  Because the Court does not rely on Presta's Declaration in deciding the pending Motions, Omni's objections are **denied as moot**.

[2]   *See* Plaintiff's First Amended Complaint [Doc. # 3], at 3; Omni Motion [Doc. # 10], at 2.

[3]   Omni Motion [Doc. # 10], at 2.

[4]   Summary of Omni Alternative Dispute Resolution Program, Exh. A to Affidavit of Kimberly Cook, Exh. A to Motion to Dismiss [Doc. # 10-1], at ECF 5.

acceptance of a "Mutual Agreement to Arbitrate Claims on an Individual Basis" ("Arbitration Agreement"), which mandates arbitration as a condition of employment for any disputes "arising out of [an employee's] application with, employment with, or termination from, [Omni]."[5]   The Arbitration Agreement is governed by the Federal Arbitration Act[6] and covers, among other things, "claims for discrimination, harassment or retaliation of any kind[.]"[7]   Section 16.3 of the Arbitration Agreement, the so-called "savings clause," provides for revocation or modification of the Agreement as follows:

> This program can be modified or revoked in writing only by the Company's corporate general counsel or vice president of human resources.  Such modification or revocation will only take place with 14 days' notice to the Associates.  Further, any modification or revocation will not apply to any claim that has already been submitted under this Program.[8]

Omni temporarily closed the hotel in May or June of 2015 to repair flood damage and informed all employees not to report to work until Omni was able to

---

[5]     Amended and Restated Alternative Dispute Resolution Program, Exh. B to Affidavit of Kimberly Cook, Exh. A to Motion to Dismiss ("Arbitration Agreement") [Doc. # 10-1], at 1, at ECF 7, § 2.

[6]     *Id.* at 2, at ECF 8, § 4.1

[7]     *Id.* at 1, at ECF 7, § 2.

[8]     *Id.* at 5, at ECF 11, § 16.3.

3

assess the damage.[9]   Presta alleges that Omni never allowed her to return to work and rejected her attempts to return.[10]   According to Presta, Omni allowed other, younger employees to return to work.[11]   Subsequently, on July 20, 2016, Presta filed a charge of discrimination based on age and disability with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission ("TWC").[12]   Presta asserts, and Omni does not deny, that during the course of the EEOC's investigation the EEOC contacted Omni regarding the dispute, and Omni responded in its defense.[13]   Plaintiff received right-to-sue notices from the EEOC and TWC on February 28, 2017, and April 10, 2017, respectively.[14]

Having exhausted her administrative remedies, Presta filed her original

---

[9]   Defendant's Original Answer to Plaintiff's First Amended Complaint [Doc. # 8], at 3.

[10]   Plaintiff's First Amended Complaint [Doc. # 3], at 3-5.

[11]   *See id.* at 5.

[12]   Charge of Discrimination, Exh. 2 to Presta's Motion for Partial Summary Judgment [Doc. # 11-2], at ECF 1-2.

[13]   *See* Presta's Motion for Partial Summary Judgment [Doc. # 11], at 5.

[14]   *See* U.S. Equal Employment Opportunity Commission Notice of Right to Sue, Exh. 3 to Presta's Motion for Partial Summary Judgment [Doc. # 11-3], at ECF 1-5; Texas Workforce Commission Notice of Complainant's Right to File Civil Action, Exh. 4 to Presta's Motion for Partial Summary Judgment [Doc. # 11-4], at ECF 1.

complaint in federal court on March 24, 2017, and an amended complaint on April, 13, 2017,[15] alleging violations of the Age Discrimination in Employment Act, the Americans with Disabilities Act of 1990, as amended, and Chapter 21 of the Texas Labor Code or the Texas Commission on Human Rights Act.[16] Specifically, Presta alleges that Omni discriminated against her based on her disability or perceived disability, failed to accommodate her for her disability to the extent she has one, and discriminated against her based on her age.[17]

Omni contends that Presta's claims are subject to the Omni Hotels Dispute Resolution Program and the mandatory arbitration provided thereunder. Presta contends that the Arbitration Agreement is unenforceable because it is illusory, unconscionable, and because there was no mutual assent.[18] The parties' Motions address the enforceability of the Arbitration Agreement and are ripe for

---

[15]    *See* Plaintiff's Original Complaint [Doc. # 1]; Plaintiff's First Amended Complaint [Doc. # 3].

[16]    Plaintiff's First Amended Complaint [Doc. # 3], at 1.

[17]    *Id.* at 5.

[18]    *See* Presta's Motion for Partial Summary Judgment [Doc. # 11] at 1, 6; Presta's Response to [the Omni Motion] [Doc. # 12], at 1-2.

        In support of her "meeting of the minds" argument, Presta alleges that Omni knew Presta has difficulty reading and understanding English, told Presta the Arbitration Agreement was unimportant, did not translate it for her, and "had her sign it."  *See* Presta's Response to [the Omni Motion] [Doc. # 12], at 2.  Omni contests this narrative.

5

disposition.

## II.     STANDARD OF REVIEW

### A.     Motion to Compel Arbitration

Section 3 of the Federal Arbitration Act provides that, where claims in a lawsuit are properly referable to arbitration, the Court "shall" stay the trial of a lawsuit until the arbitration is complete.  *See* 9 U.S.C. § 3; *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).  Evaluating a motion to compel arbitration requires determining "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement."  *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2007) (internal quotation marks omitted).  The federal policy favoring arbitration, however, "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties."  *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008).  "Instead, 'to determine whether an agreement to arbitrate is valid, courts apply ordinary state-law principles that govern the formation of contracts.'"  *Nelson v. Watch House Int'l, L.L.C.*, 815 F.3d 190, 193 (5th Cir. 2016) (citing *Carey*, 669 F.3d at 205).

The Court may dismiss a lawsuit "when *all* of the issues raised in the district court must be submitted to arbitration."  *Adam Techs. Int'l, S.A. de C.V. v. Sutherland Global Servs., Inc.*, 729 F.3d 443, 447 n.1 (5th Cir. 2013) (quoting

*Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (holding district court has discretion to dismiss case where all issues are referred to arbitration)); *see also Armstrong v. Assocs. Int'l Holdings Corp.*, 242 F. App'x 955, 959 (5th Cir. 2007) (noting that the Fifth Circuit "encourages district courts to dismiss cases with nothing but arbitrable issues because staying the action serves no purpose"); *Grether v. South Point Pontiac/Cadillac*, 2014 WL 1350907, *3 (W.D. Tex. Apr. 3, 2014).

### B.   Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case for which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).  In deciding a motion for summary judgment, the Court must determine whether the movant has shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp.*, 477 U.S. at 322-23; *Rodgers v. United States*, 843 F.3d 181, 190 (5th Cir. 2016); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

7

Where the movant bears the burden of proof at trial on the issues at hand, as is the case here, it "bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995); *see also Brandon v. Sage Corp.*, 808 F.3d 266, 269-70 (5th Cir. 2015); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response. *ExxonMobil Corp.*, 289 F.3d at 375.

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.  *Brandon*, 808 F.3d at 270; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001).  "A fact issue is 'material' if its resolution could affect the outcome of the action."  *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015); *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006).  Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016).

III.   **ANALYSIS**

The parties' pending Motions turn on the validity of the Arbitration Agreement.   Omni maintains that the Arbitration Agreement is valid and enforceable and therefore moves to compel arbitration and to dismiss this suit or stay the litigation.[19]   Presta contends that the Arbitration Agreement is unenforceable for the following three reasons: (1) the promise to arbitrate is illusory because the Arbitration Agreement allows Omni to unilaterally modify or revoke the agreement before an arbitration claim is filed; (2) the Arbitration Agreement is unconscionable because it imposes limitations designed to prevent employees from vindicating their rights; and (3) there was no mutual assent because Plaintiff did not understand the Arbitration Agreement when she signed it.[20]   The Court finds the Arbitration Agreement illusory as to this dispute for the reasons explained below, and thus does not reach Presta's additional arguments.

A.      **Standard for Whether an Arbitration Agreement is Illusory**

The Arbitration Agreement must be valid and enforceable in order for this Court to consider compelling arbitration.  Under Texas law, agreements to arbitrate must be supported by consideration.  *Lizalde v. Vista Quality Markets*, 746 F.3d

---

[19]      *See* Omni's Motion to Dismiss [Doc. # 10].

[20]      Presta's Motion for Summary Judgment [Doc. # 11], at 4-6; Presta's Response to [the Omni Motion] [Doc. # 12], at 3.

222, 225 (5th Cir. 2014); *Nelson*, 815 F.3d at 193 (citing *Lizalde*, 746 F.3d at 225).

If a "purported bilateral contract is supported only by illusory promises, there is no

contract." *Lizalde*, 746 F.3d at 225 (quoting *Mendivil v. Zanios Foods, Inc.*, 357

S.W.3d 827, 832 (Tex. App. – El Paso 2012)).   An arbitration agreement is illusory

"[w]here one party has the unrestrained unilateral authority to terminate its

obligation to arbitrate." *Lizalde*, 746 F.3d at 225.   *See Nelson*, 815 F.3d at 193

(quoting *Lizalde*, 746 F.3d at 225); *see also In re 24R, Inc.*, 324 S.W.3d 564, 567

(Tex. 2010) ("An arbitration clause is not illusory unless one party can avoid its

promise to arbitrate by amending the provision or terminating it altogether.").

An arbitration agreement that allows one party to modify or terminate the

agreement, however, does not automatically render the agreement illusory.   *See*

*Lizalde*, 746 F.3d at 226.   In the seminal Texas case, *In re Halliburton Co.*, 80

S.W.3d 566 (Tex. 2002), the Texas Supreme Court held that an employee's

arbitration agreement was not illusory because "Halliburton [could not] avoid its

promise to arbitrate by amending the provision or terminating it all together."   *Id.*

at 570.   Although the *Halliburton* agreement allowed the employer to modify or

terminate certain provisions, the agreement also included a savings clause

providing that (1) "no amendment shall apply to a Dispute of which the Sponsor

had actual notice on the date of amendment[]" and (2) "termination shall not be

effective until 10 days after reasonable notice is given to Employees or as to

Disputes which arose prior to the date of termination." *Id.* at 569-70. "Because of these two provisions, the Texas Supreme Court held that the employer could not 'avoid its promise to arbitrate by amending or terminating [the arbitration agreement] altogether.'" *Nelson*, 815 F.3d at 193 (quoting *Carey*, 669 F.3d at 206); *see also In re 24R, Inc.*, 324 S.W.3d at 567 (explaining that the *Halliburton* court "held that because the [arbitration agreement] contained a 'savings clause'— including a ten-day notice provision and a provision that any amendments would only apply prospectively—that prevented the employer from avoiding its promise, the arbitration agreement was not illusory" (citing *Halliburton*, 80 S.W.3d at 570)).

In *Lizalde v. Vista Quality Markets*, the Fifth Circuit presented a three-part test to determine whether a "*Halliburton*-type savings clause sufficiently restrains an employer's unilateral right to terminate its obligation to arbitrate." *See Nelson*, 815 F.3d at 193-94. "[R]etaining termination power does not make an agreement illusory so long as that power (1) extends only to prospective claims, (2) applies equally to both the employer's and employee's claims, and (3) so long as advanced notice to the employee is required before termination is effective." *Id.* at 194 (quoting *Lizalde*, 746 F.3d at 226). "Though the Texas Supreme Court has not yet had the occasion to discuss *Lizalde*'s three-part formulation, numerous decisions from Texas' intermediate appellate courts suggest that *Lizalde* appropriately tracked *Halliburton* and its progeny." *Id.* (citing *Temp. Alts., Inc. v. Jamrowski*,

11

511 S.W.3d 64, 68-70 (Tex. App.—El Paso 2014)); *see Henry & Sons Construction Co. v. Campos*, 510 S.W.3d 689, 695 (Tex. App.— Corpus Christi-Edinburg 2016) ("We believe that the Fifth Circuit has correctly assessed Texas law: where promises are to serve as the consideration for an arbitration agreement, the promise to arbitrate must remain mutually binding, with any modification or termination power subject to both advance notice and prospective application.")

It is clear that the Agreement in this case satisfies the second prong of *Lizalde* by applying equally to claims made both by Omni and by Presta.[21]  *See Lizalde*, 746 F.3d at 226.  Rather, the parties debate whether the Arbitration Agreement satisfies the first prong of *Lizalde*, *i.e.*, whether the Agreement in fact extends only to prospective claims.[22]

### 1.    "Prospective" Claims

As noted, the Arbitration Agreement contains the following savings clause:

This program can be modified or revoked in writing only by the Company's corporate general counsel or vice president of human resources.  Such modification or revocation will only take place with 14 days' notice to the Associates.  Further, any modification or

---

[21]    *See* Arbitration Agreement [Doc. # 10-1], at 1, at ECF 5, § 1.

[22]    Certain of the parties' arguments regarding the exhaustion requirement, *see infra* note 24, also implicate the third prong of *Lizalde*, notice.  *See Lizalde v. Vista Quality Markets*, 746 F.3d 222, 226 (5th Cir. 2014).  The Court does not reach these arguments.  *See infra* note 24.

revocation will not apply to any claim that has already been submitted under this Program.[23]

Presta argues that the Arbitration Agreement is illusory because, under the savings clause, "Omni has the unilateral ability to modify or revoke [the Arbitration Agreement] after a dispute arises but before a claim is filed with the Judicial Arbitration Mediation Services ("JAMS")[,]" as required for a claim to be submitted "under the Program."[24]   According to Omni, Presta's argument is essentially that "to be valid and enforceable, a savings clause must expressly restrict a party's right to modify or terminate arbitration rights as to *any* disputes

---

[23]    Arbitration Agreement [Doc. # 10-1], at 5, at ECF 11, § 16.3.

[24]    *See* Presta's Motion for Partial Summary Judgment [Doc. # 11], at 1.   Presta's argument, expressly based on Judge Hittner's reasoning in an Order dated March 24, 2016, in *Long v. Omni Hotels Management Corp.*, Case No. 4:15-cv-1283 (S.D. Tex.), is two-fold.   First, as noted, Presta asserts simply that Omni has the unilateral ability to modify or revoke the Arbitration Agreement after a dispute arises but before a claim is filed with JAMS.   *See* Presta Motion for Partial Summary Judgment [Doc. # 11], at 1.   Second, Presta contends that a signatory to the Arbitration Agreement who files a claim with the EEOC must exhaust administrative requirements under the EEOC before filing a claim under the Arbitration Agreement.   One such requirement for filing suit in court on an adverse treatment claim under the ADA, ADEA, or the Texas Labor Code is that the employee file a charge of discrimination and obtain a right-to-sue notice from the government agency, which notice is not available until at least 180 days after the charge has been filed.   Presta argues that notwithstanding the Arbitration Agreement's fourteen day notice period, Omni has the unilateral ability to modify or terminate the Arbitration Agreement during that 180 day period.   *See* Presta's Reply [Doc. # 18], at 1-2.   Omni disagrees.   *See* Omni's Objections & Reply [Doc. # 17], at 5; Omni's Response to Presta's Motion for Partial Summary Judgment [Doc. # 16], at 7-8.   Because the Court concludes the Arbitration Agreement is illusory in connection with Presta's first argument, it does not reach this contention.

13

that arose prior to the date of the modification."[25]  This position, Omni contends,

misconstrues *Halliburton* and is at odds with federal and state court decisions.

Omni argues that *Halliburton* did not hold that savings clauses must track, or be as

broad as, the savings clause at issue before that court, and that the savings clause in

the parties' Arbitration Agreement—providing that "any modification or

revocation will not apply to any claim that has already been submitted under th[e]

Program"— is "prospective" under the first prong of *Lizalde*.

While the Texas Supreme Court has not explicitly defined the minimum

requirements of an arbitration savings clause, *see Temp. Alts., Inc.*, 511 S.W.3d at

67, the Fifth Circuit provided important guidance.  "[A]rbitration agreements fail[]

to meet *Halliburton* solely because the agreement contain[s] no express limitation

on an employer's power to make unilateral changes to an arbitration agreement

that have 'retroactive effect,' meaning changes . . . that would strip the right of

arbitration from an employee who has already attempted to invoke it, or changes

that apply to disputes which had arisen and of which [the employer] had notice

prior to the change . . . ."  *Nelson*, 815 F.3d at 194 (internal citations and quotation

marks omitted).

---

[25]     *See* Omni's Response to Presta Motion for Partial Summary Judgement [Doc. # 16], at 4.

In *Morrison v. Amway Corp.*, for example, the Fifth Circuit addressed the enforceability of an arbitration program of Amway Corporation, a nationwide seller of household products, which program governed Amway's relationship with its distributors. *See Morrison*, 517 F.3d at 250. Under the arbitration program's "Rules of Conduct" ("Rules"), Amway could amend the Rules upon publication in official Amway literature. *See id.* at 251, 253. The distributors argued that the arbitration agreement was illusory because, in part, it allowed Amway to apply the arbitration program to claims known to Amway prior to the program's establishment. *See id.* at 253. The Fifth Circuit agreed, noting that "[t]here are no *Halliburton* type savings clauses which preclude application of such amendments to disputes which arose (or of which Amway had notice) before the amendment." *Id.* at 257.

Likewise, in *Carey v. 24 Hour Fitness, USA, Inc.*, the Fifth Circuit held that an arbitration agreement was illusory because its savings clause would not "prevent [the employer] from retroactively eliminating its arbitration policy, which is the critical inquiry for determining whether an agreement is illusory." *See Carey*, 669 F.3d at 207. Though the Fifth Circuit described retroactivity in terms of an employer's ability to make "changes to the policy that would strip the right of arbitration from an employee who has already attempted to invoke it[,]" *see id.* at 205, the Court drew on *Morrison* and that case's reasoning regarding disputes of

15

which both parties had notice.  *See id.* ("Because Amway was able to amend its policy and thus renege on its promise to arbitrate even in the context of disputes already underway, we held that its agreement to arbitrate was illusory." (citing *Morrison*, 517 F.3d at 257)).  The Fifth Circuit stated in *Nelson* that "unilateral changes to an arbitration agreement that have 'retroactive effect'" include changes that apply to disputes of which an employer "had notice prior" to the change, *Nelson*, 815 F.3d at 194, thus drawing on both *Morrison* and *Carey*.

Because the savings clause in the Arbitration Agreement permits Omni to alter the terms of the Arbitration Agreement with respect to claims of which Omni is aware but which are not formally brought under the Program, the Agreement is illusory in violation of Texas law.  The Agreement allows Omni to change or revoke the Agreement with respect to disputes of which Omni had prior notice. Omni does not deny that it received notice of the dispute at issue during the course of an EEOC investigation prompted by Presta's July 2016 charges.

Omni's contention that the employer's receipt of notice of an employee's claim is not determinative under *Halliburton* or *Lizalde* is unpersuasive.  Omni invokes four state court decisions, two of which superficially support its position. The courts in *Nabors Drilling USA, LP v. Pena* and *In re Champion Techs., Inc.* upheld a savings clause that "no amendment shall apply to a Dispute for which a proceeding has been initiated pursuant to the [company's dispute resolution

16

program] Rules . . . ." *See Nabors Drilling USA, LP*, 385 S.W.3d 103, 105 (Tex. App.–San Antonio 2012, pet. denied); *In re Champion Techs., Inc.*, 222 S.W.3d 127, 131 (Tex. App.–Eastland 2006, pet. denied).[26]  The courts concluded that the employer's power to modify or terminate the relevant arbitration agreement is limited with respect to claims that have been formally presented to the company pursuant to company policy, and such limitation is adequate under *Halliburton*. *See Nabors Drilling USA*, 385 S.W.3d at 108; *In re Champion Techs.*, 222 S.W.3d at 131-32.  The Court is unpersuaded that these rulings are consistent with the Texas Supreme Court authority on which the intermediate courts purported to rely.[27]  In any event, these decisions preceded the Fifth Circuit's analysis in *Lizalde*

---

[26]     The two policies contained similar termination provisions.  *See Nabors Drilling USA, LP*, 385 S.W.3d at 105; *In re Champion Techs.*, 222 S.W.3d at 131.

[27]     *In re Champion Techs., Inc.*, which *Nabors* cites, points to *In re Advance PCS Health L.P.*, 172 S.W.3d 603 (Tex. 2005) as "address[ing] an analogous situation[.]"  *See In re Champion Techs., Inc.*, 222 S.W.3d at 132; *Nabors Drilling USA*, 385 S.W.3d at 108-09.  In *Advance PCS Health*, the Texas Supreme Court pointed out that the arbitration agreement at issue contained a provision that "any obligations that arise prior to the termination of the Agreement shall survive such termination."  *See id.* at 607.  *Advance PCS Health* therefore did not "address an analogous situation," because the savings clauses in *Nabor* and *In re Champion* pose less limitations on the employer's power to modify the arbitration agreement than the agreement in *Advance PCS Health*.

Omni also cites *Watts Regulator Co. v. Foremost Cnty. Mutual Ins. Co.*, No. 09-16-00033-CV, 2016 WL 4045502 (Tex. App.–Beaumont 2016, pet. filed).  On July 14, 2017, the Texas Supreme Court granted review and vacated judgement of a similar case, *Watts Regulator Co. v. Tex. Farmers Ins. Co.*, 498 S.W.3d 643 (Tex. App.–Fort Worth 2016).

as reaffirmed by *Nelson*, and this Court is bound by the Fifth Circuit's interpretation of *Halliburton*.[28]

Omni also cites *Henry & Sons Construction Co. v. Campos*, in which the court held a different savings clause was illusory because it did not guarantee advance notice of any modification to the terms of the arbitration agreement.  *See* 510 S.W.3d at 696-97.  The agreement in *Campos* limited application of revisions of the arbitration agreement to claims based on events that took place after the revision's effective date, and thus to claims of which the employer necessarily did not have notice.[29]  The Arbitration Agreement's savings clause provides no similar limitation.

---

[28]    Under the rule of orderliness, the Fifth Circuit, and thus this Court, is bound by *Lizalde* unless a subsequent Texas appellate court has clearly rejected the Fifth Circuit's prior interpretation of Texas law.  *See, e.g.*, *Nelson v. Watch House Int'l*, 815 F.3d 190, 195 (5th Cir. 2016) (citing *F.D.I.C. v. Abraham*, 137 F.3d 264, 268-69 (5th Cir. 1998)).  None have done so.

[29]    In *Campos*, the savings clause provided that "[r]evisions to this Policy shall only apply prospectively.  In other words, *revisions will apply only to those claims based upon actions or events that occur following the effective date of the revisions*.  Unless all parties to an arbitration proceeding agree otherwise[,] revisions to this Policy shall not apply to any arbitration proceeding that exists as of the time that the revised Policy is issued."  *Henry & Sons Const. Co. v. Campos*, 510 S.W.3d 689, 696 (Tex. App.— Corpus Christi-Edinburg 2016) (emphasis added).

In dicta, the *Campos* court noted an alternative reading of this savings clause that construes the meaning of "an action or event upon which a claim is based" as referring to the filing of an arbitration proceeding.  *See id.* at 696-97.

The Court is bound and persuaded by the reasoning in *Halliburton*, *Lizalde*, and *Nelson*.  *Halliburton* held that the savings clause at issue was not illusory partly because amendments to or termination of the arbitration agreement by the employer would not apply to claims of which the employer had "actual notice." *See Halliburton*, 80 S.W.3d at 569-70.  The Fifth Circuit therefore has concluded that arbitration agreements failed to meet *Halliburton* "solely because the agreement contained no express limitation on an employer's power to make unilateral changes to an arbitration agreement that have retroactive effect," including "changes that apply to disputes which had arisen and of which [the employer] had notice prior to the change."  *Nelson*, 815 F.3d at 194 (internal citations and quotation marks omitted).

In the present case, the Arbitration Agreement's savings clause fails to restrict Omni's unilateral power to modify or terminate the arbitration agreement to "retroactive effect" with respect to claims, such as Presta's, of which Omni had prior notice.  *See id.*; *Halliburton*, 80 S.W.3d at 569-70.  Savings clauses that fail to do so are illusory under *Halliburton* and *Nelson*.  *See Nelson*, 815 F.3d at 194; *Morrison*, 517 F.3d at 257.  The Arbitration Agreement is likewise illusory as to this dispute.

## IV.  <u>CONCLUSION</u>

The mandatory arbitration provision in Defendant Omni's Arbitration

Agreement does not contain an express limitation on Omni's power to make unilateral changes to the Agreement that apply to disputes that have arisen and of which Omni had notice.  It therefore renders the Arbitration Agreement illusory as to this dispute.  Accordingly, it is

      **ORDERED** that Defendant Omni Hotels Management Corporation's "Motion to Dismiss, or, in the Alternative, Motion to Compel Arbitration and Stay Litigation" [Doc. # 10] is **DENIED**.  It is further

      **ORDERED** that Plaintiff Lia Presta's Motion for Partial Summary Judgment [Doc. # 11] is **GRANTED**.

      Signed at Houston, Texas, this 18 day of **July, 2017**.


NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE